1
2
3
4
5
6
7

8      UNITED STATES DISTRICT COURT

9      NORTHERN DISTRICT OF CALIFORNIA

10      San Francisco Division

11   ROBERT ROARK,                              Case No. 18-cv-01274-LB

12                    Plaintiff,
                                                **ORDER GRANTING IN PART AND**
13          v.                                  **DISMISSING IN PART DEFENDANTS'**
                                                **MOTIONS TO DISMISS**
14   WILLIAM PRICE, et al.,
                                                Re: ECF Nos. 57, 68
15                    Defendants.

16

17                              **INTRODUCTION**

18          The plaintiff Robert Roark, who is representing himself, has a sailboat called the Kittywake

19   that suffered damage during a storm, allegedly because of acts by the defendants: the United States

20   Army Corps of Engineers, the Marin County Harbormaster, Marin County deputy sheriffs, and

21   Parker Diving Service.[1] Although Mr. Roark attaches different theories of liability to his claims, in

22   essence, he claims that the defendants acted negligently, seized his boat improperly (in violation of

23   the Fourth Amendment and state law), and (for some defendants) committed fraud and

24

25

26   _____

27   [1] Third Amended Complaint ("TAC") – ECF No. 56 at 1, 3 (¶ 10). Citations refer to material in the
     Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of
28   documents.

intentionally inflicted severe emotional distress.[2] The United States answered the complaint; the other defendants moved to dismiss it.[3]

The court denies the motions to dismiss Mr. Roark's claims about the defendants' negligence and unlawful seizure of the Kittywake. Mr. Roark plausibly pleaded negligence under substantive maritime law and the unlawful seizure of his vessel under the Fourth Amendment. The court grants the motion to dismiss the state claims for failure to exhaust administrative remedies but gives Mr. Roark leave to amend to allege exhaustion. The court also grants the motion to dismiss the fraud and intentional-infliction-of-emotional-distress claims because Mr. Roark did not plausibly plead those claims.

## STATEMENT[4]

### 1. The Parties

The plaintiff is Robert Roark. He owns a 55-foot, 38-ton displacement sailboat called "Kittywake," which was moored in Richardson Bay in Marin County and damaged during a storm on January 7, 2017, after collisions with a Parking Diving vessel and a timber next to an Army Corps of Engineers' dock.[5]

---

[2] *Id.* at 4–11 (¶¶ 13–37), 11–13 (¶¶ 40–45); 13–16 (46–51), 17–26 (¶¶ 55–85), 27–30 (¶¶ 87–99).

[3] Answer – ECF No. 65; Motions – ECF Nos. 57, 68.

[4] The facts are from the TAC and the County defendants' Request for Judicial Notice. (Request for Judicial Notice – ECF No. 58.) Two documents are attached to the Request: the plaintiff's April 10, 2017 claim form to the County of Marin and the County's June 9, 2017 denial of the claim. *Id.*, Exs. A & B – ECF No. 58 at 3–7). The court takes judicial notice of both, which are public records. *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001). In this context, courts regularly take judicial notice of government claims and denials to address California Government Code § 945.6's six-month statute of limitations. *See, e.g., Petre v. City of San Leandro,* No. 15-cv-03344-JSC, 2016 WL 31637, at *4 (N.D. Cal. Jan. 4, 2016).

[5] TAC – ECF No. 56 at 3–4 (¶¶ 4, 8, 10, 14), 8 (¶ 28). In his complaint, the plaintiff mentions dates once, defining the relevant time period as January 6 to 13, 2017 (a period that encompasses the damage to his boat). *Id.* at 3 (¶ 10). His claim form to the County mentions a storm and specifies the dates of "Injury, Damage or Loss" as January 7 through 12, 2017. Claim Form – ECF No. 58 at 4. The County defendants specify that the damage occurred on January 7, 2017. County Mot. – ECF No. 57 at 9 n.2.

The defendants are Marin County Sheriff's deputies Katherine Dahlberg and Kyle Couture, the County Harbor Master William Price, Parker Diving Service, and the United States. The complaint describes their roles.

The deputies' roles during the storm are as follows. First, right before the Parker Diving Service collision, Marin County Sheriff's deputies were on a patrol boat and contacted Mr. Roark on his boat.[6] (This information is from Mr. Roark's claim form and is not in the complaint.[7] It is provided here for context.) Second, Deputies Dahlberg and Couture interacted with Mr. Roark after Parker Diving pushed his boat to the Army Corps of Engineers' dock.[8]

County defendant William Price is the Harbormaster.[9] He was on the Army Corps dock when the Kittywake arrived and would not let Mr. Roark repair his boat there.[10]

Parker Diving Service — which resides in Marin County — has a vessel that allegedly collided with the Kittywake, damaged it, and thereafter pushed it to the dock owned by the Army Corps of Engineers.[11] There, a protruding spike on a timber (next to the dock) further damaged the Kittywake's hull.[12]

## 2. Fact Allegations About the Damage to Mr. Roark's Boat

Mr. Roark's boat was anchored securely in Richardson Bay during the week of January 6 to 13, 2017.[13] On January 7, 2018, Mr. Roark was on board during a storm.[14]

---

[6] Claim Form – ECF No. 58 at 4.

[7] *Id.*

[8] TAC – ECF No. 56 at 9–10 (¶¶ 33–34).

[9] *Id.* at 6 (¶ 21), 9 (¶ 31) (Mr. Price is a part-time "Richardson Bay Regional Authority designated 'Harbor Administrator'. . . ."),

[10] *Id.* at 8–9 (¶¶ 29–32). There are two sets of paragraphs 31 and 32 on pages 8 and 9. This cite encompasses them both.

[11] *Id.* at 4 (¶ 14), 6 (¶ 21).

[12] *Id.* at 6 (¶¶ 20–21), 8 (¶ 28).

[13] *Id.* at 3 (¶ 10); Claim Form – ECF No. 58 at 4.

[14] TAC – ECF No. 56 at 4 (¶ 14); Claim Form – ECF No. 58 at 4 (references the storm).

According to a claim he filed with the county, the following happened:

> During a storm, my boat dragged anchor and blew about 300 yards north, in the middle of the bay. I was on board, and deployed sufficient chain to stop and was holding position, while deploying a second anchor, when the Sheriff patrol came near and shouted, "hey Robert what's going?" I gestured to my anchor on deck and said "I have it under control." The patrol boat left the scene, but a few minutes later, I was illegally boarded by 2 crew from a big steel boat which approached upwind, causing impact damage.[15]

Mr. Roark also described this event in his complaint. He was onboard the Kittywake when a large vessel — with a sign reading "Parker Dive Service" — collided with the Kittywake, damaging the port side and bending several safety-line stanchions.[16] Two Parker Diving Service employees jumped on board the Kittywake without seeking permission to board and without saying anything to Mr. Roark.[17] Then, they shouted orders to "tie that cleat" (possibly meaning to secure the Parker vessel to the Kittywake) and "pull that anchor."[18] (Mr. Roark had dropped a secondary anchor — a 90-pound "Nordal" with a 7/16-inch chain — just minutes before, so it had not yet "set," which "made it easy for the [Parker Diving] employee to retrieve the anchor."[19]) Both employees went forward to the main-anchor winch, removed the main anchor from the mooring post, and started pulling in the chain while the Parker Diving boat powered forward to relieve the strain on the chain.[20] After several minutes of pulling up 50 feet (of a total of 200 feet) of chain (deployed with a new "Lewmar Plow" anchor and a 120-pound bronze "kedge" 100 feet behind the anchor), both boats began to swing around the anchored chain.[21] It was apparent that the anchor was "holding fast" and "resisting the effort to pull it up, to the point that the Parker Diving boat operator passed a large bolt cutter over to his deckhand, and without consulting

---

[15] Claim Form – ECF No. 58 at 4.

[16] TAC – ECF No. 56 at 4 (¶ 14); Claim Form – ECF No. 58 at 4.

[17] TAC – ECF No. 56 at 5 (¶ 15).

[18] *Id.* at 5 (¶ 16).

[19] *Id.* (¶ 17).

[20] *Id.* (¶ 18).

[21] *Id.* (¶ 19).

Roark, they proceeded to cut the chain, and to start pushing Kittywake toward the Sausalito side of the bay" toward the Army Corps of Engineers dock.[22] When the Parker boat and the Kittywake "arrived at the Army Corp[s] dock, the Parker boat pushed Kittywake against a big floating wooden timber of about 3' in diameter and 100' long, that was tied to the south end of the concrete salvage pier, and immediately cast off and left the area."[23]

At the dock, no one told Mr. Roark "who gave the order to seize the Kittywake," but William Price, the Harbor Administrator for Richardson Bay, was on the dock, tossed a line to Mr. Roark at the forward end of the boat to hold the boat (while Mr. Roark went aft to rig the stern line), and then "left the area."[24]

"The wind was pressing Kittywake into the floating timber," and when Mr. Roark went below deck to rest, he immediately heard scraping sounds on the starboard side of the boat.[25] He returned to the deck, and "it was immediately apparent to him" that the timber was "a huge piece of floating debris with a lot of big spikes sticking out of it, and that the boat was being pushed by the wind and rubbing into them causing the sound."[26] At that point, he "tried to put some wood blocks between Kittywake and the timber, to keep from scraping the spikes, and when that didn't work, he used a long pole to 'fend off' as well as he could, while trying to yell to anyone who might be nearby."[27] No one responded, and as night fell, he kept trying to figure a way to keep space between his boat and the hazard.[28] "It was raining hard by the time he saw lights on the Army Corps Salvage boat 'Dillard' . . . tied to the adjacent pier. . . ."[29] He ran over, asked whether the man on board could help him put Kittywake "in a better place on the leeward side of the Pier, and

---

[22] *Id.* at 5–6 (¶¶ 19-21).

[23] *Id.* at 6 (¶ 21).

[24] *Id.* (¶ 22).

[25] *Id.* (¶ 23).

[26] *Id.*

[27] *Id.* at 6–7 (¶ 24).

[28] *Id.*

[29] *Id.*

the plea was ignored because 'the skipper isn't here' . . . [.]"[30] Mr. Roark returned to Kittywake and spent the rest of the night "fending off" the timber.[31]

"As dawn broke, [Mr.] Roark went below to change out of his wet clothes, and was standing in the aft cabin when a severe wind gust pushed the boat hard into the timber. Suddenly there was a loud 'crunching' sound, and a gush of water shot into the boat."[32] It took Mr. Roark a few minutes to clean out the closet where the water was coming in, and when he did, he could see that "the damage was severe. There was a round dent about 6" in diameter, with a 1" hole in the center, about a foot below the water line."[33] He "grabbed a seat cushion, and a piece of plywood[,] and propped a long bamboo pole against it across to the other side of the hull, to slow down the leak enough to get the generator started and a pump set up."[34] "It took about a half hour, pumping 20 gallons of water per minute to get the water level down long enough to get more props against the stop gap cushion."[35] "The pressure of the props caused damage to the wall across from the hole to the extent that it collapsed the door frame to the bathroom and adjacent plywood wall."[36]

Mr. Roark went on deck and jumped down on the floating timber; there he saw a "big steel spike . . . pushed into the side of the boat."[37] "He tried to put a rag into the dent, but that didn't do much as the spike kept hitting it."[38]

At about 9:00 a.m., Mr. Price arrived and "yelled from about 100 feet away to Roark[,] 'what are you doing here?'"[39] Mr. Roark "replied that he was having a problem, and that he needed to go

---

[30] *Id.*

[31] *Id.* at 7 (¶ 25).

[32] *Id.* (¶ 26).

[33] *Id.*

[34] *Id.* 7–8 (¶ 27).

[35] *Id.*

[36] *Id.*

[37] *Id.* at 8 (¶ 28).

[38] *Id.*

[39] *Id.* (¶ 29).

ashore to get patching material for the hole, and told him about the spikes."[40] Mr. Price said "that couldn't have happened to a steel boat," and at the same time, someone from the Dillard "was shouting that there '[were] no spikes.'"[41] "Mr. Price came closer on the pier, and Roark replied that his boat isn't steel, but in fact is 'concrete' (the proper term is 'Ferro-Cement').''[42] "Mr. Price . . . ordered Roark to 'fix it out in the bay', and to 'leave now.'"[43] Mr. Roark responded that he had an emergency, needed to do a temporary repair, and could not safely "go back out without the main anchor."[44] "Mr. Price disputed the fact there was a puncture, and said that it could not have happened. He told Roark to 'fix it out in the bay.'"[45]

"Mr. Meyer, who is the Captain of the [Army Corps vessel] Dillard, shouted that there were 'no spikes' on the timber, when a perfunctory inspection by him[] would have noted many large spikes protruding from the timber, one of which was directly in line with the hole which was about 1' below the waterline."[46] Messieurs Price and Meyer were "charged with the responsibility to monitor and collect 'marine debris' defined in their respective job descriptions. It seems impossible . . . that these defendants were not aware of the hazard, that the huge floating timber with many prominent spikes sticking out of it at all angles, created [a hazard], when it was placed adjacent to the ACOE [Army Corps of Engineers] concrete pier."[47]

Mr. Roark "explained that he had to go ashore and buy epoxy material to try to patch the hole, but Mr. Price denied him permission to walk on the dock[] and made plaintiff Roark deploy his skiff and row to shore in order to get to his car."[48]

---

[40] *Id.*

[41] *Id.*

[42] *Id.* (¶ 30).

[43] *Id.*

[44] *Id.* (¶ 31).

[45] *Id.*

[46] *Id.* at 9 (¶ 32).

[47] *Id.* (¶ 31). This paragraph 31 follows paragraph 32, which means that the numbering is off.

[48] *Id.* (¶ 32). This paragraph is the second paragraph 32 on page 9.

Then, Marin County deputy sheriffs Katherine Dahlberg and Kyle Couture arrived and were verbally abusive.[49] Deputy Dahlberg ordered Mr. Roark "'to leave by 5:00 p.m., or I will seize the vessel and declare it marine debris, and demolish the boat.'"[50] Mr. Roark "challenged her order and requested that she come aboard Kittywake and then . . . describe it as 'marine debris.'"[51] "She declined to do that and walked away while threatening to tow Roark's car for an alleged lapsed license tag, for which the fee had been paid, and the tag delivered, but not yet attached."[52] Mr. Roark tried calling towing companies and friends for help, but "the storm was still blowing hard" and no one came.[53] Mr. Price demanded that Mr. Roark sign over the title to the boat "to avoid charges for the destruction of the boat."[54] "At the last minute a friend did arrive, and he towed the boat back out into the bay, and the threat was avoided."[55]

The next day, Mr. Roark "found a second leak separate from the first, that is a series of cracks originating at the same level as the puncture, and about 20' forward of it on the starboard side. This required pumping water out every few days and will require further repair efforts to staunch the leaks. It cannot be repaired in the water."[56]

---

[49] *Id.* 9–10 (¶ 33). This order uses the spellings for the deputies' names that the County uses in its motion to dismiss. (County Mot. – ECF No. 57 at 1).

[50] TAC – ECF No. 56 at 9–10 (¶ 33).

[51] *Id.* at 10 (¶ 34).

[52] *Id.*

[53] *Id.* (¶ 35).

[54] *Id.*

[55] *Id.* (¶ 36).

[56] *Id.* at 10–11 (¶ 37).

### 3. Relevant Procedural History (Including Claims in the Complaint)

Mr. Roark submitted his claim form to the County of Marin on April 10, 2017.[57] The County denied the claim on June 9, 2017.[58] Mr. Roark filed his original complaint on February 27, 2018.[59] The operative complaint is the third amended complaint ("TAC"), which contains the following eight claims: (1) a violation of the International Management Code for Safe Operation of Ships and Pollution Prevention (against all defendants, meaning, the United States, Parker Diving Service, Mr. Price, and Deputies Dahlberg and Couture) based on (essentially) their negligence regarding his vessel;[60] (2) the illegal seizure of his boat in violation of the Fourth Amendment to the U.S. Constitution (against the same defendants);[61] (3) a violation of the Federal Rule set by the National Response Team in "Guidelines for Places of Refuge Decision-Making" (against the same defendants) in that the circumstances allowed for time to address the situation (again, essentially negligence);[62] (4) abuse of police power (against Deputies Dahlberg and Couture, Mr. Price, and Parker Diving Service) based on their seizure of the seaworthy Kittywake;[63] (5) conspiracy to commit fraud (against Mr. Price and Parker Diving Service) based on their alleged conspiracy to aggressively remove any boat that can be deemed marine debris;[64] (6) intentional infliction of emotional distress (against Mr. Price and Deputies Dahlberg and Kyle Couture) resulting from the threat of losing the Kittywake;[65] (7) negligence resulting in the damage to his boat (against the United States, Mr. Price, and Parker Diving Service);[66] and (8) gross negligence (against the

---

[57] Claim Form – ECF No. 58 at 4. Mr. Roark's complaint does not contain facts alleging his that he filed a claim. (*See* TAC – ECF No. 56).

[58] Notice of Rejection – ECF No. 58 at 6.

[59] Compl. – ECF No. 1.

[60] TAC – ECF No. 56 at 4–11 (¶¶ 13–37).

[61] *Id.* at 11–13 (¶¶ 40–45).

[62] *Id.* at 13–16 (¶¶ 46–51).

[63] *Id.* at 17–20 (¶¶ 55–66).

[64] *Id.* at 20–23 (¶¶ 67–74).

[65] *Id.* at 23–26 (¶¶ 75–84).

[66] *Id.* at 27–28 (¶¶ 87–92).

United States, Mr. Price, and Parker Diving Service) based on the damage caused to Kittywake from the spiked debris by the Army Corps of Engineers pier.[67]

The United States answered on October 19, 2018.[68] The County defendants and Parker Diving Service moved to dismiss all claims.[69] The United States responded, pointing out that — as facially alleged in the TAC — admiralty jurisdiction exists here for the tort claims arising from (1) the alleged collision on Richardson Bay between Kittywake and the Parker Diving vessel and (2) the collision between the Kittywake and the floating timber.[70] The court held a hearing on December 6, 2018.[71]

## STANDARD OF REVIEW

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant "fair notice" of what the claims are and the grounds upon which they rest. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint does not need detailed factual allegations, but "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a claim for relief above the speculative level . . .." *Twombly*, 550 U.S. at 555 (internal citations omitted). Courts liberally construe a complaint filed by a party who is representing himself. *Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir. 2000).

To survive a motion to dismiss, a complaint must contain sufficient factual allegations, which when accepted as true, "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when

---

[67] *Id.* at 29–30 (¶¶ 93–99).

[68] Answer – ECF No. 65.

[69] Motions – ECF Nos. 57, 68.

[70] United States' Response — ECF No. 66 at 2 (citing *Foremost v. Richardson*, 457 U.S. 668, 674 (1982) (admiralty jurisdiction for tort claims arising out of the collision of two pleasure boats on navigable waters).

[71] Minute Entry – ECF No. 80.

the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotations omitted).

Fraud allegations elicit a more demanding standard. Rule 9(b) provides: "In alleging fraud . . ., a party must state with particularity the circumstances constituting fraud . . . . Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). This means that "[a]verments of fraud must be accompanied by the 'who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba–Geigy Corp. USA,* 317 F.3d 1097, 1106 (9th Cir. 2003). Like the basic "notice pleading" demands of Rule 8, a driving concern of Rule 9(b) is that defendants be given fair notice of the charges against them. *In re Lui*, 646 Fed. App'x 571, 573 (9th Cir. 2016) ("Rule 9(b) demands that allegations of fraud be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong.") (quotation omitted); *Odom v. Microsoft Corp.*, 486 F.3d 541, 553 (9th Cir. 2007) (Rule 9(b) requires particularity "so that the defendant can prepare an adequate answer").

If a court dismisses a complaint, it must give leave to amend unless the "pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss and Liehe, Inc. v. Northern California Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990).

"The Supreme Court has instructed the federal courts to liberally construe the inartful pleading of pro se litigants. It is settled that the allegations [in a pro se complaint,] however inartfully pleaded[,] are held to less stringent standards than formal pleadings drafted by lawyers." *Eldridge v. Block,* 832 F.2d 1132, 1137 (9th Cir. 1987) (internal citations and quotations omitted); *see Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (per curiam); *Boag v. MacDougall*, 454 U.S. 364. 365 (1982) (per curiam); *Haines v. Kerner,* 404 U.S. 519, 520 (1972) (per curiam); *Hamilton v.*

*Brown*, 630 F.3d 889, 893 (9th Cir. 2011). The rule of liberal construction is "particularly important in civil rights cases." *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992).

## ANALYSIS

Mr. Roark's claims can be grouped in the following categories: (1) **claims one**, **three**, **seven**, and **eight** charge negligence resulting in damage to the Kittywake;[72] (2) **claims two** and **four** charge the unlawful seizure of his boat, in violation of the Fourth Amendment and state law;[73] and (3) two additional state-law claims: **claim five** charging Parker Diving and Mr. Price with conspiracy to commit fraud, and **claim six** charging Mr. Price and the deputies with intentional infliction of emotional distress. The court grants the motion to dismiss the complaint for failure to exhaust administrative remedies on the state-law claims (**claims four**, **five**, and **six**), grants the motion to dismiss the fraud and intentional-infliction-of-emotional-distress claims (**claims five** and **six**) for failure to plausibly plead claims, and otherwise denies the motion to dismiss because Mr. Roark plausibly pleads negligence under substantive maritime law (**claims one**, **three**, **seven**, and **eight**) and plausibly pleads the seizure of the Kittywake in violation of the Fourth Amendment (**claim two**).

### 1. Negligence Claims (Claims One, Three, Seven, and Eight)

In claims one, three, seven, and eight, Mr. Roark claims that the defendants negligently damaged the Kittywake. **Claims one** and **three** are against all defendants, **claim seven** is against the United States, Mr. Price, and Parker Diving Service; and **claim eight** is against the United States and Mr. Price.[74] The defendants move to dismiss on grounds that include failure to identify

---

[72] **Claims** one **and three** are against all defendants; **claim seven** is against the United States, Mr. Price, and Parker Diving Service; and **claim eight** is against the United States and Mr. Price. TAC – ECF No. 56 at 4, 13, 27, and 29.

[73] **Claim two** is against all defendants, and **claim four** is against the deputies, Mr. Price, and Parker Diving Service. *Id.* at 11, 17.

[74] *Id.* at 4, 13, 27, and 29.

a viable theory for negligence, failure to exhaust administrative remedies (on the state claims), and failure to establish the violation of a duty to harm his boat once it was on the dock.[75] The court denies the motion to dismiss on two grounds. First, liberally construed, all claims plausibly charge negligence under substantive maritime law. Some claims (particularly claims one and three) are somewhat duplicative, but Mr. Roark has tried to parse out responsibility based on overall negligence (claims one and three) and negligence tethered to specific conduct at specific times (claims seven and eight). Second, the defendants did not address whether exhaustion of state remedies is required for the federal maritime claims.

First, the case is within the court's admiralty jurisdiction, and substantive maritime law applies.[76] The test for admiralty jurisdiction is as follows:

> A tort claim falls within the admiralty jurisdiction of the federal courts when two conditions are met. First, the tort must occur on or over navigable waters; this is the "locality" or "situs" test. *See Solano v. Beilby,* 761 F.2d 1369, 1370–71 (9th Cir. 1985); *Guidry v. Durkin,* 834 F.2d 1465, 1469 (9th Cir. 1987). Second, the actions giving rise to the tort claim must "bear a significant relationship to traditional maritime activity." *Executive Jet Aviation, Inc. v. City of Cleveland,* 409 U.S. 249, 268 (1972). This is the "nexus" or "relationship" test. *See Solano,* 761 F.3d at 1371; *Guidry,* 834 F.2d at 1469.

*Taghadomi v. United States,* 401 F.3d 1080, 1084 (9th Cir. 2005). Substantive admiralty law thus applies. *East River S.S. Corp. v. Transamerica Delaval Inc.*, 476 U.S. 858, 864 (1986). "General principles of negligence law guide the federal courts in maritime tort cases." *Christensen v. Georgia-Pacific Corp.*, 279 F.3d 807, 817 n.38 (9th Cir. 2002) (citation omitted); *see* 6 Thomas J. Schoenbaum, *Admiralty & Mar. Law Preliminary Materials*, § 5:4 (2018).

Mr. Roark plausibly pleads negligence against all defendants by alleging conduct that plausibly violated the standard of care and proximately caused injury to the Kittywake. For example, Parker Diving Service collided with his boat, cut his anchor, and forced him against the

---

[75] County Mot. – ECF No. 57 at 5–6; Parker Diving Mot. – ECF No. 68 at 5–6.

[76] *See* United States' Response – ECF No. 66 at 2. The United States' motion to dismiss an earlier version of the complaint summarizes the law more completely. U.S. Mot. – ECF No. 35 at 6–15.

spiked timber near the Army pier, thus damaging the boat.[77] The deputies allegedly ordered Mr. Roark to leave the pier when it was not safe to do so.[78] Mr. Price did not recognize the timber as a hazard, did not help Mr. Roark after he knew about the hazard, and ordered him to leave the pier.[79] The defendants plausibly acted in concert.

Mr. Roark also defined the standards of care by reference to custom, reasonableness, detailed fact allegations, and safety laws.[80] "In admiralty the duty of care may be derived from three basic sources: (1) duly enacted laws, regulations, and rules; (2) custom; and (3) the dictates of reasonableness and prudence." 6 Thomas J. Schoenbaum, *Admiralty & Mar. Law Preliminary Materials*, § 5:4 (2018).[81]

In a simple negligence case, these factual allegations are sufficient. *See, e.g., Twombly,* 550 U.S. at 591 n.10 (fewer factual allegations are necessary to state a plausible simple negligence claim (as opposed to a complex antitrust claim)); *McCauley v. City of Chicago*, 671 F.3d 611, 616–17 (7th Cir. 2011) (the "[r]equired level of factual specificity rises with the complexity of the claim.").

Second, in their motions, the defendants did not address the requirement of administrative exhaustion for the maritime claims. Instead, they characterized the claims as state claims subject to the California Tort Claims Act six-month statute of limitations.[82] Given the court's order (below)

---

[77] *Id.* at 4 (¶ 14), 5–6 (¶¶ 15–21), 8–10 (¶¶ 28, 31–33, 35), 27–28 (¶¶ 87–90).

[78] *Id.* at 9–10 (¶ 33).

[79] *Id.* at 28 (¶¶ 91–92).

[80] *Id.* at 8–10 (¶¶ 28, 31–33, 35), 28 (¶ 92).

[81] To support claim one, Mr. Roark cites the International Safety Management Code ("ISM"), 46 U.S.C. § 3201–05, implemented in federal regulations, 33 C.F.R. § 96.200–96.390). *Id.* at 4. To support claim three, he cites the Guidelines for Places of Refuge Decision-Making, *Id.* at 13. Courts have concluded that the ISM does not provide a private right of action. *Jones v. Sanko Steamship Co.*, Ltd., 148 F.Supp.3d 374, 392 n.39 (D. N.J. 2015) (collecting cases). The D.C. Circuit reached the same conclusion about the Guidelines for Places of Refuge Decision-Making. *Defenders of Wildlife v. Gutierrez*, 532 F.3d 913, 926 (D.C. Cir. 2008). The court liberally construes Mr. Roark's complaint to plead negligence claims. Also, statutes and regulations can define standards of care (just as they do in the context of medical malpractice or police standards), even if they do not establish stand-alone private causes of action.

[82] *See, e.g.*, County Mot. – ECF No. 57 at 14.

for supplemental briefing, the court does not reach the applicability of the six-month statute of limitations to the maritime claims. The defendants can raise the defense in a motion to dismiss Mr. Roark's amended complaint or in supplemental briefing as part of the process to address exhaustion that the court suggests in this order's conclusion.

In sum, the court denies the motion to dismiss the negligence claims.

## 2. Seizure in Violation of the Fourth Amendment (Claim Two) and State law (Claim Four)

Mr. Roark claim the illegal seizure of his boat (1) by all defendants, in violation of the Fourth Amendment to the U.S. Constitution (**claim two**) and (2) by Deputies Dahlberg and Couture, Mr. Price, and Parker Diving Service in violation of state law (**claim four**).[83] The defendants move to dismiss on grounds that include failure to plead the County defendants' participation in the seizure, qualified immunity, failure to plead a state-law claim, and failure to exhaust administrative remedies for the state claims.[84] The court denies the motion to dismiss the federal claim on three grounds: First, liberally construed, Mr. Roark plausibly charges an unlawful seizure of his boat under federal and state law. Second, the court can better address qualified immunity on a full record for any summary-judgment motion. Third, exhaustion is not required for the federal claim. But because Mr. Roark did not plead exhaustion of administrative remedies, the court dismisses the state claim with leave to amend to plead exhaustion in an amended complaint.

First, Mr. Roark plausibly pleads state action that interfered with his possessory interest in the Kittywake.[85]

A state actor seizes property in violation of the Fourth Amendment when there is "some meaningful interference with an individual's possessory interests in that property." *Lavan v. City of Los Angeles*, 693 F.3d 1022, 1027, 1030–31 (9th Cir. 2012). Towing a boat can be a seizure. *See Hoefling v. City of Miami*, 811 F.3d 1271, 1274, 1281 (11th Cir. 2016). In *Hoefling*, the court

---

[83] TAC – ECF No. 56 at 11–13 (¶¶ 40–45), 17–20 (¶¶ 55–66).

[84] County Mot. – ECF No. 57 at 5–6; Parker Diving Mot. – ECF No. 68 at 5–6.

[85] Parker Diving was acting as a government contractor "under color of state law" at the time of the tow. Parker Diving Mot. – ECF No. 68 at 9–11.

reversed the district court's 12(b)(6) dismissal of a complaint challenging the seizure of a sailboat by marine-patrol officers. *Id.* at 1283. The court held that the plaintiff plausibly pleaded a claim by alleging that his sailboat was not derelict, he was not given adequate notice that it was derelict, and his vessel was destroyed pursuant to a systematic cleanup to get rid of ugly boats. *Id.* at 1281. In an analogous context, state actors can violate the Fourth Amendment by towing a mobile home or a car. *Id.* (citing *Soldal v. Cook County,* 506 U.S. 56, 61 (1992)).

Construing his complaint liberally, Mr. Roark plausibly pleads a concerted course of action by all defendants that resulted in "some meaningful interference" with his possessory interests in the Kittywake. *Lavan*, 693 F.3d at 1027, 1030–31. His first contact was with the Patrol Boat deputies, and immediately after, Parker Diving employees (plausibly at the behest of the deputies) approached the Kittywake. They immediately jumped on board, cut his anchor, and forced him to the pier, where the spiked timber damaged his boat more.[86] The deputies and Mr. Price were at the pier, plausibly were part of the entire operation, if not integral participants in it, and compounded the interference with Mr. Roark's use of his boat by their actions at the pier (as summarized above).[87] *Hopkins v. Bonvicino,* 573 F.3d 752, 770 (9th Cir. 2009) (integral-participant doctrine). At the pleadings stage, the court cannot conclude as a matter of law that Mr. Roark's claim for unlawful seizure fails.[88]

Moreover, construing his complaint liberally, Mr. Roark plausibly pleads a corresponding claim under state law for unlawful seizure. The defendants argue that there is no claim for abuse of police power, but state law establishes a cause of action for unlawful seizure, whether styled as conversion or a Bane Act claim or the equivalent. *See, e.g.*, Cal. Civ. Code § 52.1 (Bane Act); *McLain v. City and County. of San Francisco*, No. C 12-3225 MEJ, 2014 WL at *1 (N.D. Cal. Feb. 3, 2014) (conversion claim).

---

[86] TAC – ECF No. 56 at 4 (¶ 14), 5–6 (¶¶ 15–21), 8–10 (¶¶ 28, 31–33, 35), 27–28 (¶¶ 87–90).

[87] *Id.* at 9–10 (¶ 33); 28 (¶¶ 91–92).

[88] This decision does not bear on the ultimate determination about the merits of the plaintiffs' claims. *Cf.* United States Response – ECF No. 66 at 2 (making this point). The issue is fair notice of the claims, the grounds on which they rest, and fact allegations that plausibly state a claim for relief. Fed. R. Civ. P. 8(a); *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678.

Second, the state actors might be entitled to qualified immunity given the immediacy of the storm, but that issue is best considered on a full record for any summary-judgment motion. *See Groten v. California*, 251 F.3d 844, 851 (9th Cir. 2001).

Third, Mr. Roark is not required to exhaust state administrative remedies for his federal civil-rights claim. *Patsy v. Bd. of Regents of St. of Fla.*, 457 U.S. 496, 516 (1982). As to the state-law claim of unlawful seizure, exhaustion of administrative remedies is required.

Under the California Tort Claims Act, a party suing a public entity or its employees for money damages must submit a timely claim to the entity before filing suit in court. *See* Cal. Gov't Code §§ 905, 911.2, 945.4, 950.2. "A claim under the TCA must be submitted to the public entity within six months of the accrual of the plaintiff's cause of action." *Via v. City of Fairfield*, 833 F. Supp. 2d 1189, 1197 (E.D. Cal. 2011) (citing Cal Gov't Code § 911.2(a)). "If a claim is rejected, the public entity must provide written notice, and if such notice is provided in accordance with the statute, a plaintiff wishing to file a lawsuit must do so 'not later than six months after the date such notice is personally delivered or deposited in the mail.'" *L.S. v. City of Oakland*, No. C 09-03004 CW, 2009 WL 4705424, *2 (N.D. Cal. Dec. 2, 2009) (quoting Cal. Gov. Code § 945.6(a)(1)). A plaintiff must allege compliance with the TCA in his complaint. *AIDS Healthcare Found. v. L.A. Cty.*, No. CV 12-10400 PA (AGRx), 2013 WL 12134048, at *9 (C.D. Cal. Mar. 18, 2013); *see also Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 627 (9th Cir. 1988) (a district court erred by dismissing the complaint for failure to exhaust administrative remedies without advising the pro se litigant of this requirement).

Mr. Roark filed his claim with the County of Marin on April 10, 2017.[89] The County denied the claim and mailed notice on June 9, 2017.[90] Mr. Roark filed his lawsuit on February 27, 2018, more than six months after June 9, 2017. The complaint is untimely if the June 9 notice is the operative notice.

In his opposition and at the December 6, 2018 hearing, Mr. Roark referenced a second claim that he filed with the Richardson Bay Regional Bay, which he says was denied on September 1, 2017 and renders his claims timely.[91] At the December 6 hearing, the parties discussed who participated in the Richardson Bay process (including County participants) and the representations that County participants made to Mr. Roark during that process. That at least raises the specter of an ongoing administrative process. The court cannot tell definitively on this record whether the appropriate date triggering the six-month period is June 9, 2017 or September 1, 2017. The court also does not know the claims raised in the second administrative claim.

Mr. Roark in any event did not plead exhaustion. He must. *AIDS Healthcare Found.*, 2013 WL 12134048, at *9. The court dismisses the state-law claim without prejudice and will allow Mr. Roark an opportunity to amend to show exhaustion. *Karim-Panahi*, 839 F.2d at 627.


### 3. Conspiracy to Commit Fraud (Claim Five) and Intentional Infliction of Emotional Distress (Claim Six)

Mr. Roark claims that (1) Mr. Price and Parker Diving Service conspired to defraud him by using the storm as an opportunity to seize his boat to aggressively remove marine debris and to

---

[89] Claim Form – ECF No. 58 at 4. Mr. Roark's complaint does not contain facts alleging his compliance with the California Tort Claims Act. (*See* TAC – ECF No. 56). "In federal court, the failure to allege facts that either demonstrate or excuse compliance with the California Tort Claims Act will subject a state law claim to dismissal." *Young v. City of Visala*, 687 F.Supp.2d 1141, 1152 (N.D. Cal. 2009) (citing *Mangold v. California Pub. Utils. Comm'n*, 67 F.3d 1470, 1477 (9th Cir. 1995); *see also Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 627 (9th Cir. 1988). Because the court judicially notices the claim form attached to the defendants' request for judicial notice and recognizes Mr. Roark's *pro se* status, the court concludes that the claim was in fact filed.

[90] Notice of Rejection – ECF No. 58 at 6; Proof of Service – ECF No. 58 at 7.

[91] Opp. – ECF No. 67 at 3.

profit from its salvage (**claim five**) and (2) Mr. Price and the deputies intentionally inflicted emotional distress by their actions that day and in other interactions with Mr. Roark (summarized below) (**claim six**).[92] The defendants move to dismiss on grounds that include failure to exhaust administrative remedies and failure to plead a claim.[93] The court grants the motion to dismiss.

Preliminarily, and for the reasons set forth in the previous section, the court dismisses these state-law claims with leave to amend to show exhaustion. *AIDS Healthcare Found.*, 2013 WL 12134048, at *9; *see Karim-Panahi*, 839 F.2d at 627.

For the reasons set forth below, the court also dismisses the fraud claim (**claim five**) for failure to state a claim, without prejudice, and with leave to amend. The court also addresses the sufficiency of the intentional-infliction of emotional distress claim (**claim six**).

### 3.1 Conspiracy to Commit Fraud (Claim Five)

Under California law, the elements of fraud and deceit are: (1) misrepresentation; (2) knowledge of falsity; (3) intent to defraud; (4) justifiable reliance; and (5) resulting damages. *Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (1996).

Mr. Roark grounds his fraud claim in the allegations of negligence, summarized above.[94] Parker Diving's violation of the standard of care — by approaching him upwind instead of downwind — was outside the "first rule of seamanship in [h]igh[-]wind conditions" and necessarily caused a severe collision and damage to Kittywake.[95] By this observation, Mr. Roark imputes bad intent to Parking Diving and Mr. Price. He ascribes motive to them: an incentive to rid the area of "marine debris" and to contract with salvagers to seize and destroy "marine debris."[96] Kittywake was an "especially lucrative opportunity for the salvagers because of its size and material[,] which makes the demolition contract price higher than that for smaller, more

---

[92] *Id.* at 20–26 (¶¶ 75–85).

[93] County Mot. – ECF No. 57 at 5–6; Parker Diving Mot. – ECF No. 68 at 5–6.

[94] TAC – ECF No. 56 at 21 (¶ 67) (incorporating his previous allegations by reference).

[95] *Id.* at 22 (¶ 71).

[96] *Id.* at 21–22 (¶¶ 68–70, 72–73).

lightly built boats."[97] As more evidence of bad intent and motive, he points to the defendants' seizure and destruction of another boat during the storm.[98] He accuses the defendants of using the storm as an opportunity to seize the vessels.[99] He alleged that the pattern of police harassment and public denunciation after losing the boat was not coincidental.[100]

This may state a tort claim for something akin to wrongful conversion (a claim subsumed in **claim four**). It does not state a claim for fraud, which requires (essentially) a lie to get money. Mr. Roark has not alleged facts with particularity under Rule 9(b), meaning, the "who, what, when, where, and how" of the alleged conspiracy to defraud him. *Vess,* 317 F.3d at 1106.

The court dismisses **claim five** without prejudice.

### 3.2 Intentional Infliction of Emotional Distress (Claim Six)

In California, "[a] cause of action for intentional infliction of emotional distress exists when there is (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Kelley v. Conco Companies*, 196 Cal. App. 4th 191, 215 (2011). "A defendant's conduct is outrageous when it is so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Id.* (internal quotation marks omitted).

Mr. Roark recounts his experiences with Mr. Price and the deputies. The deputies threatened to take the boat as "marine debris" and gave him only until 5 p.m. to remove the boat.[101] But the boat was seaworthy, and the defendants had no right to characterize it as marine debris and threaten confiscation on that basis.[102] The deputies' bad motive is shown by their long history with Mr. Roark, starting with their earlier efforts to evict the Kittywake from a private leased dock and their

---

[97] *Id.* at 22 (¶ 72).

[98] *Id.* (¶¶ 72–73).

[99] *Id.*

[100] *Id.* at 22–23 (¶ 74).

[101] *Id.* at 18 (¶ 60).

[102] *Id.* (¶ 59).

United States District Court
Northern District of California

harassment of him (through citations and confiscation of his car and a trailer with the Kittywake's engine).[103] The ongoing threat of losing the Kittywake, the loss of the expensive engine (costing at least $10,000 to replace), car ($4,000 to replace), trailer ($1,500 to replace), and tools ($500 to replace), and the damage to the boat "[a]ll add up to incredible stress and negative health effects."[104] Other stressors include the ongoing hostile police presence at the Richardson Bay Regional Bay meetings and a barrage of bad publicity and negative attitudes.[105]

Mr. Roark describes his stress convincingly, but these facts do not establish the extreme conduct to support a claim of intentional infliction of emotional distress. *Kelley*, 196 Cal. App. 4th at 215.

Liberally construing his complaint, possibly Mr. Roark pleads negligent infliction of emotional distress. It is a form of the tort of negligence and has the following elements: (1) duty, (2) breach of duty, (3) causation, and (4) damages. *Huggins v. Longs Drug Stores California, Inc.*, 6 Cal. 4th 124, 129 (1993); *see Burgess v. Superior Court*, 2 Cal. 4th 1064, 1072 (1992) (elements for negligent infliction of emotional distress include (1) defendant engaged in negligent conduct involving usual issues of duty and breach, (2) plaintiff suffered serious emotional distress, and (3) defendant's conduct was a substantial factor in causing the emotional distress suffered by plaintiff).

A duty to the plaintiff may be "imposed by law, be assumed by the defendant, or exist by virtue of a special relationship." *Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 985 (1993) (citing *Marlene F. v. Affiliated Psychiatric Med. Clinic, Inc.*, 48 Cal.3d 583, 590 (1989)). Under California law, there is no duty to avoid negligently causing emotional distress to another. *Id.* at 984.

> [U]nless the defendant has assumed a duty to plaintiff in which the emotional condition of the plaintiff is an object, recovery is available only if the emotional distress arises out of the defendant's breach of some other legal duty and the emotional distress is proximately caused by that breach of duty. Even then, with

---

[103] *Id.* at 18–20 (¶¶ 52–64).

[104] *Id.* at 23–24 (¶¶ 75–76).

[105] *Id.* at 24 (¶ 77–78).

United States District Court
Northern District of California

> rare exceptions, a breach of the duty must threaten physical injury, not simply
> damage to property or financial interests.

*Id.* at 985. Therefore, a plaintiff must either allege a duty owed the plaintiff regarding his emotional condition or allege that his emotional distress arises out of the defendant's breach of some other legal duty. *See Brahmana v. Lembo*, No. C–09–00106 RMW, 2010 WL 290490, at *2 (N.D. Cal. Jan. 15, 2010). And in a case like this, which involves "direct victim" liability, there must be a duty "that is assumed by the defendant or imposed on the defendant as a matter of law, or that arises out of a relationship between" the parties. *Marlene*, 48 Cal. 3d at 590.

Here, on this briefing (which does not discuss the interplay with substantive maritime law), the court cannot conclude as a matter of law that Mr. Roark does not plead a claim for negligent infliction of emotional distress. The court dismisses **claim six** with leave to amend to the extent that Mr. Roark claims intentional infliction of emotional distress.

## CONCLUSION

The court grants the motion to dismiss the complaint for failure to exhaust administrative remedies on the state-law claims (**claims four**, **five**, and **six**), grants the motion to dismiss the fraud and intentional-infliction-of-emotional-distress claims (**claim five** and **six**) for failure to plausibly plead claims (but construes **claim six** as a claim for negligent infliction of emotional distress), and otherwise denies the motion to dismiss because Mr. Roark plausibly pleads negligence under substantive maritime law (**claims one**, **three**, **seven**, and **eight**) and plausibly pleads the seizure of the Kittywake in violation of the Fourth Amendment (**claim two**).

The effect of this order is **claims one**, **two**, **three**, **seven** and **eight** survive (subject to any exhaustion requirement). Also, Mr. Roark plausibly stated claims under Rule 12(b)(6) for all claims but the fraud claim (**claim five**). But he did not allege exhaustion in his complaint for the state-law claims (**claims four**, **five**, and **six**). *AIDS Healthcare Found.*, 2013 WL 12134048, at *9. The court affords Mr. Roark an opportunity to amend his complaint to allege exhaustion. *Karim-Panahi*, 839 F.2d at 627.

Mr. Roark may file an amended complaint by January 31, 2019. This deadline is after the

case-management conference on January 17, 2019 at 11:00 a.m. In their joint case-management statement, the court directs the parties to address whether they can agree to a different process for addressing the issue of exhaustion (including the effect of the exhaustion requirement on the maritime negligence claims). The court suggests supplementing the record with the second claim that Mr. Roark filed with the Richardson Bay Regional Bay, the denial of that claim, any information that the court can judicially notice to address the effect of California Government Code § 945.6's six-month statute of limitations, and any supplemental briefing on the legal issues. *See Petre,* 2016 WL 31637, at *4.

**IT IS SO ORDERED.**

Dated: January 2, 2019

_____

LAUREL BEELER
United States Magistrate Judge